IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UMB BANK, N.A., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-01154-O |
| § | |
| ALL COMMERCIAL FLOORS, INC., § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff UMB Bank, N.A.'s ("UMB's") Motion for Default Judgment, filed February 28, 2022. ECF No. 31. United States District Judge Reed O'Connor referred the Motion and related briefing to the undersigned pursuant to 28 U.S.C. § 636. ECF No. 35. Having considered the Motion and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 31) and **ENTER DEFAULT JUDGMENT** on UMB's breach of contract claim as explained below.

**I.   BACKGROUND**

UMB loaned Defendant All Commercial Floors, Inc. ("Borrower") funds under a series of secured loans beginning in August 2018. *See* ECF Nos. 1 at 2; 31 at 1; 31-1 at 3. As Borrower's business expanded and liquidity tightened, it requested additional financial accommodations from UMB. ECF No. 31-1 at 2. Accordingly, the parties amended the loan conditions in August 2019 and November 2020. *Id.* at 2-4. In the relevant timeframe, UMB provided a holistic credit portfolio to meet Borrower's fluctuating capital needs. *Id.* Among other things, the parties' credit facility included standard liquidity loans (the "Term Loans"), two revolving lines of credit ("RLOCs"), and a $750,000 commercial credit card program (the "Credit Card Program"). *Id.* The logistical

provisions and payment schedules for the individual Term Loans, RLOCs, and Credit Card Program are largely immaterial; what matters are the parties' rights and obligations under each, taken as a whole. The undersigned will signpost throughout these findings, conclusions, and recommendation when the provisions of a particular note are germane. More generally, the undersigned refers to the aggregate of the parties' transactions, and the documents memorializing each, as the "Credit Facility."

    All told, UMB delivered the following under the Credit Facility:

(i)     that certain Revolving Note I (Unconditionally Cancelable) in the original principal amount of $4,000,000 dated August 27, 2018 (as amended from time to time, the 'RLOC I Cancelable Note') evidencing an unconditionally cancelable portion of a revolving line of credit (the 'RLOC I Loan');

(ii)     that certain Revolving Note I in the original principal amount of $10,000,000 dated August 27, 2018 (as amended from time to time, the 'RLOC I Note') evidencing the remainder ('RLOC I Committed Portion') of the RLOC I Loan;

(iii)     that certain Revolving Note II in the original principal amount of $1,500,000 dated August 27, 2018 (as amended from time to time, the 'RLOC II Note,' and together with the RLOC I Cancelable Note and the RLOC I Note, the 'Revolving Notes') evidencing a second revolving line of credit ('RLOC II,' and together with RLOC I, the 'Revolving Loans');

(iv)     that certain Term Note in the original principal amount of $1,400,000 dated August 27, 2018 (as amended from time to time, the 'Term Note I') evidencing a fully funded term loan ("Term Loan I');

(v)     that certain Term Note II in the original principal amount of $380,656.74 dated August 7, 2019 (as amended from time to time, the 'Term Note II') evidencing a fully funded term loan ('Term Loan II'); and

(vi)     that certain Term Note III in the original principal amount of $1,000,000 dated August 7, 2019 (as amended from time to time, the 'Term Note III,') and together with Term Note I and Term Note II, the 'Term Notes') evidencing a fully funded term loan ('Term Loan III,' and together with the Term Loan I and Term Loan II, the 'Term Loans').

ECF No. 31 at 2; *see also* ECF No. 5-1 (attaching copies of the above transactions to the Receiver Application). Among other representations and warranties, the Credit Facility contained a provision authorizing UMB to terminate its commitments to Borrower and require immediate repayment if Borrower defaulted. ECF Nos. 31 at 3; 5-1 at 6. Should UMB require legal assistance

2

to enforce its rights under any Term Loan, RLOC, or the Credit Card Program, the Credit Facility provided that Borrower would cover the costs and attorneys' fees reasonably necessary to do so. ECF No. 5-1 at 7, 15, 54.

Borrower defaulted. ECF No. 31 at 3-4. Despite UMB's repeated demands, Borrower failed to repay the principal in full along with accrued interest and other fees and charges enumerated in the Credit Facility. *Id.* UMB repeatedly tried to reach Borrower to discuss repayment, consolidation options, and the whereabouts of collateral listed under the Credit Facility's security agreement. *Id.* at 5. When those attempts proved futile, UMB retained counsel. *Id.*; *see* ECF No. 31-1 at 6. When the efforts of UMB's counsel proved futile, UMB sued Borrower on October 18, 2021. *See* ECF No. 1. Three months later, UMB perfected service upon Borrower through its then-president, Robert Kevin Jones. ECF No. 16. Upon the parties' joint application, the Court established a Receivership to assist in securing UMB's entitled collateral, repayments, and auxiliary expenses arising from the breached Credit Facility. *See* ECF Nos. 5, 7, 11. The joint receivership application and related status reports were the last filings Borrower made in this case. *See* ECF Nos. 5-11. When Borrower failed to answer or otherwise file a responsive pleading, UMB asked the Clerk of Court to enter Borrower's default. *See* ECF No. 25. The Clerk did so, *see* ECF No. 26, prompting UMB to file the instant Motion. *See* ECF No. 31.

## II.    LEGAL STANDARD

### A.    Default Judgment.

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a)

(noting default occurs where the defendant "has failed to plead or otherwise defend" against the complaint). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default, the plaintiff must apply for a default judgment from the Court. Fed. R. Civ. P. 55(b)(2).

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Rather, courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Courts use a three-pronged analysis to determine if default judgment is appropriate. *J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). First, courts ask if default judgment is procedurally warranted. *See Lindsey*, 161 F.3d at 893. The *Lindsey* factors inform this inquiry. Under *Lindsey*, the Court may consider whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) default judgment would be too harsh; and (6) the court would be obliged to set aside the default upon motion from the defendant. *Id.*

Second, if default is procedurally warranted under *Lindsey*, courts analyze the substantive merits of the plaintiff's claims and ask if the pleadings establish a sufficient basis for default judgment. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."

4

*Nishimatsu*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Morelia*, 126 F. Supp. 3d at 813. In making this determination, the Complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 & n.29 (5th Cir. 2002) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2688 at 58-59 & n.5 (3d ed. 1998)). At this juncture, courts often find it helpful to conduct a Rule 55(b)(2) hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *see* Fed. R. Civ. P. 55(b)(2) (noting courts may conduct a hearing on motions for default judgment if needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter").

While the Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments," this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). But default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989); *see also Shipco*, 814 F.2d at 1014 (calling default judgments "draconian").

**B.** **Attorneys' Fees.**

"Under the bedrock principle known as the American Rule, each litigant pays his own attorneys' fees, win or lose, unless a statute or contract provides otherwise." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). But even where a party is statutorily or contractually entitled to attorneys' fees, the Court has "broad discretion in setting the appropriate award." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The first step in setting an appropriate award looks to the "lodestar" of the relevant fees. *Id.* "The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). The lodestar sets the baseline for reasonable fees, but the Court "may adjust it upward or downward in exceptional cases." *Id.*; *see also Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987) ("[T]he calculation of the lodestar does not end the inquiry and [] other considerations may persuade the district court to increase or decrease a fee award."). Nevertheless, the Supreme Court has "established a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

After calculating the lodestar, the Court evaluates the amount in light of the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors include: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the

attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." *Johnson*, 488 F.2d at 717-19; *see also* Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9) (incorporating the *Johnson* factors into the State Bar of Texas's rules of professional conduct).

But not all *Johnson* factors carry the same persuasive merit. Indeed, the Supreme Court has suggested factor six—"whether the fee is fixed or contingent"—is largely erroneous, *see Burlington*, 505 U.S. at 567, and most courts no longer consider it in their *Johnson* analysis. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993); *see also* ECF No. 262 in Cause No. 3:20-cv-1277-S (Mem. Op. & Order Granting Attorneys' Fees) (collecting cases) ("Additionally, the Supreme Court has barred any consideration of whether the fee is fixed or contingent, and therefore the Court does not consider that factor in its enhancement analysis."). Beyond that, certain *Johnson* factors speak more to a fee's reasonability than others: "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

"[I]t will not always be necessary for a district court to address each of the twelve factors in explaining the considerations affecting its decision." *Davis v. Fletcher*, 598, F.2d 469, 471 (5th Cir. 1979). For instance, the Court must be careful not to "double count" a factor, like the time and labor required, that was "already considered in calculating the lodestar." *Walker v. U.S. Dep't of Hous. and Urb. Dev.*, 99 F.3d 761, 771 (5th Cir. 1996). Nevertheless, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citation omitted). To

facilitate a clear explanation, "courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *Kellstrom*, 50 F.3d at 324). To carry its burden, the fees-seeking party must present evidence that is "adequate to determine reasonable hours." *Id.* (quoting same at 325).

### III. ANALYSIS

The Clerk entered Borrower's default, ECF No. 26, meaning the Court must now ask if default judgment is appropriate. *Lewis*, 236 F.3d at 767. Having applied the three-pronged inquiry here, *see Morelia*, 126 F. Supp. 3d at 813, the undersigned concludes default judgment is proper on UMB's breach of contract claim.

#### A. Default judgment is procedurally appropriate under *Lindsey*.

UMB's claim survives the first of the three-pronged inquiry. Under *Lindsey*, default judgment may be procedurally warranted based on six considerations. *See* 161 F.3d at 893. All six support default judgment here. For the first factor, no material issues of fact remain concerning UMB's performance under the Credit Facility and Borrower's breach. *See* ECF Nos. 5-1; 31; 31-1; *see also Lindsey*, 161 F.3d at 893. Borrower stipulated to the entry of the Court's Order Appointing Receiver, *see* ECF No. 7, but has filed nothing since. Thus, the Court may take UMB's pleadings as true: pleadings which demonstrate all material facts underlying UMB's breach of contract claim. *See* ECF No. 31. *Lindsey*'s first prong thus favors default judgment.

Similarly, nothing here shows the second factor's "substantial prejudice" requirement undermines UMB's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. Borrower was properly served with the Complaint and has had ample opportunity to respond in this matter. *See,*

*e.g.*, ECF No. 16 (showing perfected service as of January 18, 2022). *Lindsey*'s second prong thus favors default judgment. The third and fourth elements also support default judgment because the grounds of Borrower's default are clearly established, *see* ECF No. 26, and nothing indicates this default is due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Despite being afforded multiple opportunities to do so, Borrower failed to respond to UMB's Motion or file any other pleadings explaining this unresponsiveness. Accordingly, *Lindsey*'s fifth factor also supports default judgment. *See* 161 F.3d at 893; *see also Joe Hand Promotions, Inc. v. Tacos Bar & Grill, LLC*, No. 3:16-cv-01889-M, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017) ("Entering default judgment against [Defendants], who have taken no action to respond to this action, is not 'harsh.'") (quoting *Lindsey*, 161 F.3d at 893); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) ("[Defendant] has had over five months to answer or otherwise respond to Plaintiff's Complaint, mitigating the harshness of a default judgment.").

Finally, given the clear satisfaction of the above elements, nothing indicates the Court would "be obliged to set aside the default upon motion from the defendant." *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense"). Accordingly, the *Lindsey* analysis reflects default judgment is proper here.

### B. The pleadings establish a sufficient basis for default judgment.

Having found default judgment appropriate under *Lindsey*, the undersigned looks next to the substantive merits of UMB's claim, asking whether the pleadings establish a sufficient basis for default judgement. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. To do so, they need only

satisfy Rule 8. *Wooten*, 788 F.3d at 498; *see* Fed. R. Civ. P. 8(a) (requiring a "short and plain statement" of the claim). Given such a straightforward rubric, UMB's Complaint and Motion clearly suffice. *See generally* ECF Nos. 1, 31.

"The essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). UMB satisfied the first showing by alleging the existence of the Credit Facility, *see* ECF No. 31 at 2, and furnishing copies of the underlying documents. ECF No. 5-1. UMB satisfied the second showing by alleging their performance under the Credit Facility and furnishing evidence of such performance. *Id.* Likewise, UMB satisfied the third showing by alleging Borrower's defaults and producing evidence to verify their allegations. *See* ECF Nos. 31 at 3-6; 31-1 at 5-6. When a borrower fails to pay back a loan, *Smith*'s "damages" showing is a priori knowledge that requires no further showing. By showing its performance and Borrower's breach, UMB established its damages and entitlement to default judgment. *See Wooten*, 788 F.3d at 498. While default judgments are "a drastic remedy, not favored by the Federal Rules," *see Sun Bank of Ocala*, 874 F.2d at 276, UMB's entitlement here is beyond dispute. Thus, the Court must next "determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 813.

    **C.**    **The Court should enter default judgment in UMB's favor for $16,627,876.64.**

The final step in the Court's three-pronged process involves a determination of appropriate damages. *See id.* This is the only step in the inquiry where the Court does not assume the pleadings' truth. *See Shipco*, 814 F.2d at 1014. Plaintiffs cannot summarily provide the Court with figures for damages or attorney's fees without explanation. Rather, they must "establish[] the necessary

facts," either through detailed affidavits or an evidentiary hearing, to make the amount "capable of mathematical calculation." *United Artists*, 605 F.2d at 857. After considering UMB's Motion and its extensive evidentiary attachments, the undersigned concludes damages in this matter are mathematically ascertainable, amounting to $16,627,876.64. This figure is the total of (1) UMB's damages incurred as a result of Borrower's default; and (2) UMB's reasonable attorneys' fees, expenses, and costs of court. The undersigned addresses the sums in that order below.

### 1.   **UMB is entitled to $16,450,557.64 in damages.**

As calculated in the Motion and attached exhibits and verified by accompanying documents, the balance of unpaid principal and interest under the Credit Facility was as follows as of the date UMB filed the instant Motion:

- RLOC I Note: $9,845,702.37 (Principal) / $100,063.87 (Interest)
- RLOC I Cancellable Note: $4,000,000.00 (Principal) / $12,000.00 (Interest)
- RLOC II Note: $1,499,614.13 (Principal) / $5,998.46 (Interest)
- Term Loan I: $257,825.99 (Principal) / $1,340.69 (Interest)
- Term Loan II: $199,822.52 (Principal) / $0.00 (Interest)
- Term Loan III: $32,830.38 (Principal) / $0.00 (Interest)
- Credit Card Program: $495,359.23 (Principal) / $0.00 (Interest)

*See* ECF No. 31 at 3-4, 7.

As noted, the above interest reflects application of the contractual rate for each transaction in the Credit Facility as of February 2022. *See id.* The undersigned notes that UMB ordinarily would be entitled to pre-judgment interest to accrue from the date they filed the instant Motion through the date Judge O'Connor renders a judgment. But UMB voluntarily waived that entitlement, as reflected in the Motion: "Although Lender is entitled to recover interest that accrues

through the date of judgment at the applicable rate, Lender has elected to simplify judgment calculation by seeking only accrued, unpaid interest through February 16, 2022." *Id.* at 6 n.1.

With respect to that accrued interest, the RLOC I Note, RLOC I Cancellable Note, and RLOC II Note all had a floating per annum rate equal to the Prime Rate minus 0.25%, adjusted daily (at maximum); or a rate of 3.0% (at minimum). *See* ECF Nos. 31 at 4; 5-1 at 95. Term Loan I had a fixed rate of 5.2% per annum. *See* ECF Nos. 31 at 4; 5-1 at 38. Aggregating the outstanding principal under each of the Loan Agreements, Borrower owes UMB $16,331,154.62 in total unpaid principal. Aggregating the accrued interest for each of the Loan Agreements, Borrower owes UMB $119,403.02 in accrued interest. The figures reflected in UMB's chart are consonant with external computations and may thus be relied upon by the Court. *See generally* ECF No. 31 at 7 (providing a chart confirming the relevant outstanding principal and interest amounts). Having combined these figures, the undersigned concludes UMB is entitled to default judgment for $16,450,557.64 in damages for its breach of contract claim.

      **2.**      **UMB is entitled to $177,319.00 in reasonable attorneys' fees, expenses, and court costs.**

UMB seeks $189,345.50 in attorneys' fees and expenses. ECF Nos. 31 at 1, 7, 9; 31-1 at 6. As an initial matter, UMB is contractually entitled to recover such fees and expenses under the Credit Facility. ECF Nos. 1 at 11; 5-1 at 54, 85. UMB furnished direct evidence of $6,565.77 in recoverable expenses, most of which came in the form of recording fees and lien search fees. *See* ECF No. 31-2 at 5, 19, 29-33. Because evidence affirmatively establishes that figure, the Court should grant UMB's request for $6,565.77 in expenses. However, the Court retains substantial discretion to determine the scope of appropriate fees, contractual entitlement to fees notwithstanding. *Watkins*, 7 F.3d at 457.

      **a.**      **$170,753.23 is a reasonable lodestar.**

The first step in determining an appropriate fees award involves finding the lodestar, which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *LULAC*, 119 F.3d at 1232. UMB notes that "[a]s of February 3, 2022, [Bryan Cave Leighton Paisner] attorneys and paralegals had spent a total of 323 hours, totaling $182,779.73, performing legal services for [UMB] in connection with enforcing [UMB's] rights under the Loan Documents." ECF No. 31-2 at 4. UMB's counsel attached sworn declarations and billing records which reflect: a partner with seventeen years' experience billed 78.1 hours at $660/hour in 2021 and $715/hour in 2022; a partner with twenty-five years' experience billed 172.3 hours at $690/hour in 2021 and $765/hour in 2022; and an associate with eight years' experience billed 47.5 hours at $515/hour in 2021 and $575/hour in 2022. *Id.* at 5, 8-67 (attached billing records). Assisting these attorneys, three paralegals billed 18.7 hours with rates ranging from $275-360/hour. *Id.* Combining these fees, UMB seeks $182,779.73.

In assessing whether that figure is a reasonable lodestar, the undersigned is mindful that fee reasonability is a factor of "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see generally Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) ("This court uses the 'lodestar' method to calculate attorneys' fees, which is applied by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for the work at issue."). For attorneys of the caliber and experience here, nothing indicates the rates suggested are inflated or inappropriate in the relevant legal community. *See generally* ECF No. 262 in Cause No. 3:20-cv-01277-S (providing an insightful analysis of attorneys' fees in the Dallas-Fort Worth legal community).

"The party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive,

13

duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citations omitted). What remains is the lodestar. The undersigned thoroughly examined time records from UMB's counsel, *see* ECF No. 31-2 at 8-85, to reach the conclusions below.

To begin with paralegal fees, the Fifth Circuit has traditionally held that "paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001); *see also Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) (discussing *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 & n.1 (5th Cir. 1980)) (noting paralegal fees are generally "unrecoverable overhead expenses" unless "the paralegal performs work traditionally done by an attorney"). However, the Credit Facility contemplates broader coverage for paralegal fees than the Fifth Circuit typically affords: "The Borrower . . . does hereby indemnify the Lender against losses and reasonable expenses (including court costs, attorneys' *and paralegals' fees*)." ECF No. 5-1 at 54 (emphasis added). Thus, because UMB furnished documentation of 18.7 hours of paralegal work at rates ranging from $275-360/hour, its request for paralegal fees is reasonable and should be incorporated into the lodestar.

Turning to the attorneys' fees, the Court may not assume $182,779.73 is a reasonable lodestar, but must carefully examine the time records produced. *Gagnon*, 607 F.3d at 1044 (citations omitted); *Davis*, 598 F.2d at 471. While nothing in the billing records here is "excessive" or "duplicative," certain time records are "inadequately documented." *See Watkins*, 7 F.3d at 457. Generally, redacted billing records are acceptable for lodestar purposes "so long as the court has sufficient information to form an opinion on the reasonableness of the fees." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S. D. Tex. 2009) (citations omitted). But "[r]edacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." *Id.*

14

For most records here, the unredacted information sufficiently contextualized the billing entry such that the undersigned could ascertain the general contours of the legal services provided. For others, however, the redactions precluded any meaningful judicial review of the billing. *See generally Kellstrom*, 50 F.3d at 326-27 (observing the Court has "sufficient leeway within which to *accept or reject* fee applications" and noting "[l]itigants take their chances" when submitting records that are "vague as to precisely what was done") (emphasis in original) (citations omitted). For this reason, the undersigned excluded the following entries:

- 7/26/21 entry for 3.4 hours ($2,346.00) stating: "worked on detailed review of ▮▮▮▮▮▮ for ▮▮▮▮▮▮; work on analysis of ▮▮▮▮▮▮" (ECF No. 31-2 at 9);

- 7/27/21 entry for 4.6 hours ($3,174.00) stating: "Finalize initial review of ▮▮▮▮▮▮ for ▮▮▮▮▮▮; work on analysis of ▮▮▮▮▮▮ and forward draft to UMB team" (*Id.*);

- 9/01/21 entry for 1.70 hours ($1,122.00) stating: "Conference regarding meeting outcome; analyze ▮▮▮▮▮▮" (*Id.* at 24);

- 10/6/21 entry for 1.10 hours ($566.50) stating: "Telephone call regarding ▮▮▮▮▮▮; review ▮▮▮▮▮▮; begin review of ▮▮▮▮▮▮" (*Id.* at 35);

- 10/08/21 entry for 2.50 hours ($1,452.00) stating: "Review and analyze ▮▮▮▮▮▮" (*Id.* at 36);

- 10/14/21 entry for 5.10 hours ($3,366.00) stating: "Continue drafting ▮▮▮▮▮▮ receivership application; begin ▮▮▮▮▮▮" (*Id.* at 37).

15

Because such entries were "redacted either in full or to such an extent that the entry fails to provide an adequate description of the task and subject matter," they were not considered as reimbursable in the lodestar analysis. *See Alto-Shaam, Inc. v. Manitowoc Co.*, No. 7:09-cv-018-O, 2012 WL 12978015, at *7 (N.D. Tex. Feb. 2, 2012).

To redact all or substantially all information after operative verbs like "review" or "analyze" stymies the Court's review of the relevant task: a "reasonable time" will differ when reviewing the magna carta versus reviewing a colleague's email and a reasonable use of time analyzing complex case law would be unreasonable if spent analyzing a lien-search result. What is reasonable in one context is often unreasonable in another, meaning the Court cannot evaluate a time entry's reasonability if the entry fails to adequately describe both the legal service rendered and the context or subject matter of that service. Because the above redacted entries evade meaningful judicial review, they were excluded from the lodestar. *See Randolph*, 634 F. Supp. 2d at 800 (noting bills should be excluded where the entry "does not provide sufficient information to classify and evaluate the activities and hours expended"). There were other redacted entries that similarly evaded review, but the undersigned declined to exclude them because other entries facilitated their contextualization or they recorded such little billable time that, whatever the redacted information conveyed, accomplishing the relevant task in such little time seemed inherently efficient and unworthy of further inquiry. The above exclusions amounted to $12,026.50. Subtracting that from the $182,779.73 UMB requests, the undersigned concludes $170,753.23 is a reasonable lodestar for this action.

        **b.**    **The lodestar should not be adjusted based on the *Johnson* factors.**

The Court must next determine whether the lodestar should be adjusted up or down based on the *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. These findings, conclusions, and

recommendation do not include separate analysis of *Johnson*'s first and sixth factors. The sixth factor is irrelevant, and courts have largely stopped asking whether a given fee was contingent or flat. *See Burlington*, 505 U.S. at 567; *Shipes*, 987 F.2d at 320. The first factor of "time and labor required" supports the above lodestar. *See id.* at 717. But that factor was "already considered in calculating the lodestar," so its re-analysis here would be superfluous. *See Walker*, 99 F.3d at 771. Of the remaining factors, factors two, three, four, seven, and ten were neutral, while factors five, eight, and nine indicate $170,753.23 is reasonable. None suggest that figure should be adjusted.

To briefly touch on the neutral factors, factor two is unimplicated here because this case stems from a standard contract dispute, thus presenting no "novel" or "difficult" legal questions. *See id.* at 717. Likewise, the third factor is unimplicated because this case does not call for highly specific or niche competencies. *See id.* And UMB's counsel did not indicate in the sworn declaration that representing UMB in this case significantly precluded the relevant attorneys from other work. *See generally* ECF No. 31-2. Thus, the fourth factor is also inapplicable. *See Johnson*, 488 F.2d at 718. Further, UMB has not indicated pressing time constraints apply to this action, which has been litigated since October 2021. *See* ECF No. 1. Thus, this case implicates no atypical "time limitations imposed by the client or circumstances." *See Johnson*, 488 F.2d at 718. Because the case presents nothing uniquely undesirable from a practitioner's perspective, the tenth *Johnson* factor also does not inform the Court's inquiry here. *See id.* And finally, "the nature and length of the professional relationship with the client" does not factor into the Court's reasonability analysis because nothing implicates the nature and extent of UMB's relationship with the attorneys in this matter. *See* ECF No. 31-2 at 3 (indicating UMB retained its current counsel in July 2021 and referencing no preexisting professional relationship between the parties).

As for factors suggesting $170,753.23 is a reasonable fee award, the undersigned would direct attention to the above analysis of "the time and labor required," a factor which strongly suggests the lodestar is reasonable but is unserved by redundant analysis. *See supra*, pp. 12-16. For present purposes, the undersigned will simply reiterate the lodestar is reasonable considering UMB's counsel billed 323 hours in this matter, hours which include time spent:

    a) Reviewing the relevant loan documents, developing enforcement strategies, and advising [UMB] accordingly;
    b) Drafting correspondence and other documents, including forbearance agreements, arising from Borrower defaults;
    c) Drafting, preparing, filing and prosecuting this litigation;
    d) Interviewing receiver candidates and participating in meetings involving the Court-appointed receiver and his counsel; and
    e) Communicating with counsel for Borrower's other creditors.

The fifth *Johnson* factor also suggests the lodestar is reasonable and should not be subtracted from or enhanced. The fifth factor looks to the "customary fee" in similar cases. *See Johnson*, 488 F.2d at 717. In this regard, UMB's counsel billed at prevailing market rates for large law firms in Dallas-Fort Worth. *See, e.g.*, *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, 3:16-cv-02355-G-BT, 2021 WL 6248370, at *6 (N.D. Tex. Dec. 17, 2021) (finding rates of $537 to $862 per hour reasonable). Accordingly, that factor supports the lodestar as assessed.

In the Fifth Circuit, *Johnson*'s first, eighth, and ninth factors constitute a triumvirate of top considerations when determining a fee's reasonability. *Migis*, 135 F.3d at 1047. With the first factor already analyzed, the undersigned turns to the eighth and ninth: the "amount involved and results obtained" and the "experience, reputation, and ability of the attorneys." *See Johnson*, 488 F.2d at 718-19. The lodestar is essentially all of UMB's requested fees, minus those the Court cannot sufficiently examine due to redactions. With this in mind, the eight factor makes the lodestar seem quite reasonable, as such a figure represents less than two percent of the total value at stake in this action. *See* ECF Nos. 31 at 9. While $170,753.23 is a substantial amount of money,

18

it pales in comparison to the much larger sum Borrower owes UMB under the RLOCs, Term Loans, and Credit Card Program. *Id.* This is particularly true given the undersigned's recommendation that Judge O'Connor enter default judgment in UMB's favor. With enormous sums involved and the undersigned's recommendation of an outcome favorable to UMB, $170,753.23 is a patently reasonable fee for legal services in this matter.

This point is underscored by the immense experience UMB's counsel brings to the table. The ninth *Johnson* factor weighs the attorneys' "experience, reputation, and ability" when determining a fee's reasonability. *See* 488 F.2d at 718-19. As discussed above, UBM's attorneys have fifty years of collective experience in business and finance litigation. Such extensive expertise merits the hourly rates charged here. *See Advanced Physicians, S.C.*, 2021 WL 6248370, at *6. This is uniquely true considering the assessed lodestar is based on rates routinely accepted in similar cases. *See id.* Accordingly, Judge O'Connor should grant $170,753.23 as a reasonable award of attorneys' fees. When added to the $6,565.77 in expenses discussed above, UMB is entitled to $177,319.00 in attorneys' fees and expenses.

## IV.   CONCLUSION

UMB is entitled to **$16,450,557.64** in damages arising from Borrower's myriad breaches under the Credit Facility and related agreements. UMB is also entitled to recover **$177,319.00** in attorneys' fees and expenses reasonably incurred in enforcing its rights under the Credit Facility. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** UMB's Motion (ECF No. 31) and **ENTER DEFAULT JUDGMENT** in favor of Plaintiff UMB Bank, N.A. against Defendant All Commercial Floors, Inc. for **$16,627,876.64**, plus post-judgment interest calculated at the applicable federal rate from the date judgment is entered and compounded annually. *See* 28 U.S.C. § 1961.

A copy of these findings, conclusions, and recommendation shall be served on all parties

in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on July 21, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE